# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 15-00028-01-CR-W-BCW |
| Michael Eugene Burch, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO DISMISS BASED ON POST-INDICTMENT DELAY (Doc. #16) filed on February 21, 2017, by defendant Michael Eugene Burch ("Burch"). On May 24, 2017, the undersigned held an evidentiary hearing on Burch's motion. Burch was present and was represented by his counsel, Assistant Federal Public Defender Anita L. Burns. The government was represented by Assistant United States Attorneys Justin Davids and Jess Michaelsen. At the evidentiary hearing, three witnesses testified: Deputy United States Marshals Richard Haralson, III, and Jason Thomas and Detective Frank Rorabaugh with the Kansas City, Missouri Police Department. Additionally, the following exhibits were offered by the government and were admitted into evidence:

| Number | Description |
|---|---|
| Gov't #1 | Federal arrest warrant |
| Gov't #2 | CaseNet |
| Gov't #3 | Judgment |
| Gov't #4 | Docket sheet |
| Gov't #5 | Bail bond |
| Gov't #6 | Case management order |
| Gov't #7 | Delegation |
| Gov't #8 | ECF docket sheet |
| Gov't #9 | Joint stipulation |

Finally, the following exhibits were offered by Burch at the evidentiary hearing and were admitted into evidence:

| Number | Description |
|---|---|
| Def't #11 | Mo. DOC records |
| Def't #12 | Docket sheet |
| Def't #13 | Docket sheet |
| Def't #14 | Delegation |
| Def't #15 | KCPD status report |
| Def't #16 | KCPD incident report |
| Def't #17 | Docket sheet |
| Def't #18 | Writ of habeas corpus |
| Def't #19 | Writ of habeas corpus |
| Def't #20 | order for writ of habeas corpus |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On January 28, 2015, a federal grand jury in the Western District of Missouri indicted Burch for being a felon-in-possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Tr. at 17-18, Gov't #9.

2. That same day, the Court issued an arrest warrant for Burch. Gov't #9.

3. The arrest warrant for Burch was then provided to the United States Marshal's Service ("USMS") on January 29, 2015. Gov't #9.

4. Under the then USMS procedure, the USMS did not enter the arrest warrant into NCIC – instead, at the time, it was the responsibility of the agency that performed the underlying investigation to place the warrant into the system. Tr. at 19, Gov't #9.

5. In Burch's case, the investigative agency was the Kansas City, Missouri Police Department. Gov't #9.

6. The case agent assigned to Burch's case by the Kansas City, Missouri Police Department was Detective Frank Rorabaugh and "it was [his] responsibility to enter the warrant." Tr. at 16-17, 19, Gov't #9.

7. Det. Rorabaugh did not enter the Burch arrest warrant into NCIC.[1] Tr. at 18, Gov't #9.

8. According to Det. Rorabaugh, his failure to enter the arrest warrant was "an oversight" stemming from a miscommunication because Det. Rorabaugh "believed a writ was being completed to transfer [Burch] from state custody to federal custody" and the writ would be sought sometime after Burch's state cases were concluded. Tr. at 19, 23, 26.

9. At the time of the federal indictment, Det. Rorabaugh believed that Burch was in the custody of the Missouri Department of Corrections facing state criminal charges. Tr. at 18, 25.[2]

10. In fact, at the time Burch was federally indicted, he was also facing state criminal law charges in in the Circuit Court of Camden County, Missouri. Gov't #9.

11. Det. Rorabaugh reviewed the docket sheet for the Camden County case on Missouri CaseNet[3] and saw that Burch's state court defense attorney had advised the Camden County Circuit Court judge that Burch's case would be proceeding to trial. Tr. at 18, 25-26.

12. In addition, at the time Burch was federally indicted, he was also facing state criminal law charges in one case pending in the Circuit Court of Jackson County, Missouri. Gov't #9.

13. On April 27, 2015, Burch pled guilty to possession of methamphetamine, marijuana, and drug paraphernalia in his Camden County case. Gov't #9.

14. On that same day, a Camden County Circuit Court judge sentenced Burch to five years imprisonment. Gov't #9.

15. At that time, Det. Rorabaugh was not aware that Burch had been sentenced. Tr. at 29.

16. On February 22, 2016, Burch was released from the custody of the Missouri Department of Corrections. Gov't #9.

17. Because of the pending Jackson County charges and Jackson County warrant, officers with Jackson County were notified that Burch was going to be paroled. Tr. at 29-31.

---

[1] The National Crime Information Center, an information-sharing tool and central database for tracking crime-related information.

[2] According to Burch's attorney, at the time Burch was federally indicted, Burch was being housed at the Missouri Department of Corrections' Maryville Treatment Center, a minimum security prison for male inmates just outside of Maryville, Missouri. Tr. at 28.

[3] Missouri CaseNet is an online site maintained by the Office of State Courts Administrator that allows visitors to access to Missouri state courts case records, including docket entries, parties, judgments, and charges in public court.

3

18. However, no notification was provided to the Kansas City, Missouri Police Department or Det. Rorabaugh, because the federal arrest warrant (which arose from a KCPD investigation) had not been entered into NCIC. Tr. at 29-31.

19. On February 23, 2016, Burch appeared in the Circuit Court of Jackson County, Missouri, and was arraigned in his Jackson County case. Gov't #9.

20. A Jackson County Circuit Court judge set a preliminary hearing for March 8, 2016, and released Burch on a $5,000 ROR signature bond. Gov't #9.

21. After Burch failed to appear for a court hearing, the Jackson County Circuit Court judge revoked Burch's bond and issued a warrant for Burch. Gov't #9.

22. In March of 2016, the United States Attorney's Office for the Western District of Missouri contacted Det. Rorabaugh to find out if Burch's warrant had ever been entered into NCIC. Tr. at 20, 24-25.

23. Det. Rorabaugh then identified and contacted Burch's state court probation officer on March 17, 2016, and learned that Burch had failed to appear for a court hearing and had failed to appear for a meeting with the parole officer and the probation officer did not have means for contacting Burch. Tr. at 21, 34.

24. Later on March 17, 2016, Det. Rorabaugh submitted a DELEGATION OF APPREHENSION RESPONSIBILITY form with the USMS. Tr. at 21, 34-35, Gov't #9.

25. The form gave the USMS authority to take full investigatory measures to locate and arrest Burch. Tr. at 37.

26. With the delegation, the USMS entered Burch's warrant into NCIC. Tr. at 22.

27. Oversight of the efforts to locate and arrest Burch was assigned to Deputy United States Marshal Jason Thomas with the USMS in the Western District of Missouri. Tr. at 38.

28. DUSM Thomas began following leads from Burch's case file, including attempting to locate Burch's girlfriend, calling various state sheriff's offices, speaking with Burch's parole officer, and placing Burch's information in a newspaper [Kansas City's Most Wanted]. Tr. at 38-40.

29. In November of 2016, Richard Haralson, III, was a Deputy United States Marshal with the USMS in the Southern District of Texas, Brownsville Division. Tr. at 7-8.

30. One of DUSM Haralson's duties is the enforcement of federal fugitive investigations. Tr. at 8.

31. In November of 2016, DUSM Haralson received an anonymous call stating that Burch was staying in Harlingen, Texas, with his parents, and that Burch was the subject of an outstanding federal warrant. Tr. at 8-9, 43-44.

32. DUSM Haralson then contacted DUSM Thomas for additional information about Burch. Tr. at 40.

33. On November 15, 2016, DUSM Haralson conducted surveillance on Burch's parents' residence in Harlingen. Tr. at 9-11.

34. While surveilling the property, DUSM Haralson observed an individual – identified as Burch – drive away from the property. Tr. at 10-11.

35. DUSM Haralson followed the vehicle until it came to a stop at another Harlingen residence whereupon emergency vehicle lights were activated and Burch was arrested. Tr. at 11-12; Gov't #9.

36. After he was arrested, Burch asked DUSM Haralson "How did you find me?" Tr. at 14-16, 41-42.

## PROPOSED CONCLUSIONS OF LAW

In his motion, Burch moves the Court to dismiss this case against him with prejudice based on a violation of the Sixth Amendment. To that end, the Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused has the right to a speedy trial. U.S. CONST. amend. VI. Burch claims the government violated this constitutional right by failing to promptly arrest him after the indictment in this case was filed and he was the subject of an arrest warrant. *See, e.g.*, *United States v. Sprouts,* 282 F.3d 1037, 1042 (8th Cir. 2002). In general, a criminal defendant who claims an indictment must be dismissed because his speedy trial rights were violated must initially allege and establish "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States,* 505 U.S. 647, 651-52, 112 S.Ct. 2686, 2690 (1992). Broadly speaking, this threshold is met if the delay between indictment and a defendant's arrest is at least one year. *Id.* at 652 n.1, 112 S.Ct. at 2691 n.1; *United States v. Brown,* 325 F.3d 1032, 1034 (8th Cir. 2003). In this case, the twenty-two month delay is sufficient to trigger a conclusion of presumptive prejudice to Burch.

If a defendant satisfies this threshold showing, a court then must conduct the speedy trial analysis first articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182 (1972), to determine if

the presumption of prejudicial delay warrants a dismissal. Under *Barker,* the Sixth Amendment claim is assessed by balancing: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *Id.* at 530, 92 S.Ct. at 2192 ; *United States v. Shepard,* 462 F.3d 847, 864 (8th Cir. 2006). No one factor, taken by itself:

> [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.

*Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

### 1. Length of delay

When a defendant has made a showing that post-indictment delay was presumptively prejudicial (as has been done in this case), "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim ." *Doggett,* 505 U.S. at 652, 112 S.Ct. at 2691. The extent of delay is significant because, as noted by the Supreme Court, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id*. As already noted, in this case the post-indictment delay exceeded a year. However, this factor alone does not support a claim that Burch's Sixth Amendment rights were violated. As exemplified by *Barker,* depending on the particular facts of a case, far greater delays have been held to not violate a defendant's speedy trial rights. *See*, *e.g.*, *Barker,* 407 U.S. at 534, 92 S.Ct. at 2194 (holding the defendant's speedy trial rights were not violated although the five-year delay between arrest and trial); *Reynolds v. Leapley,* 52 F.3d 762, 764 (8th Cir. 1995) (holding nine-year post-indictment delay did not violate defendant's speedy trial rights where the defendant fled the jurisdiction to avoid arrest, became incarcerated elsewhere and did not immediately demand a speedy trial). In this case, the

Court does not find that a twenty-two month post-indictment delay, in and of itself, is "so inordinately lengthy that it requires the severe remedy of an automatic dismissal." *United States v. Richards,* 707 F.2d 995, 997 (8th Cir. 1983). Nonetheless, the delay is still a significant factor to be balanced by the Court.

### 2. Responsibility for delay

The second *Barker* factor requires a determination as to why a delay occurred. For that, "the prosecution bears the burden of explaining delay in bringing an accused to trial." *McNeely v. Blanas,* 336 F.3d 822, 827 (9th Cir. 2003) (collecting cases). Viewing that evidence, a court then must determine if the government "discharge[d] its 'constitutional duty to make a diligent, good-faith effort to bring [the defendant to trial].'" *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 190 (1973) (*quoting*, *in part*, *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579 (1969)).

It is axiomatic that a defendant is not permitted to benefit from delay caused by his own conduct. *Richards,* 707 F.2d at 997 (although a 35-month post-indictment delay was presumptively prejudicial, dismissal was improper where the government had tried to locate the defendant, but the defendant was hiding); *United States v. Weber,* 479 F.2d 331, 333 (8th Cir. 1973) (holding that a 21-month post-indictment delay did not weigh against the government where the defendant "purposefully obstruct[ed] justice by becoming a fugitive"). Conversely, however, delay attributable solely to the government necessarily must weigh against the government in the *Barker* balancing. But government delay can result from far differing reasons. Indeed, as the Supreme Court has noted, "speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656, 112 S.Ct. at 2693.

Thus, the reasons for governmental delay may be benign, as when "[t]he government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes

7

into hiding, track him down." *Id*. On the other hand, delay could be the result of intentional bad faith by the government seeking an unfair prosecutorial advantage. When present, those extremes make the Sixth Amendment analysis easier; but they do not represent the typical post-indictment delay case.

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Doggett*, 505 U.S. at 656-57, 112 S. Ct. at 2693.

In this case, there is no evidence that the government engaged in bad-faith or intentional misconduct in failing to timely seek an arrest of Burch following his indictment. On the record and evidence presented to the Court, it is abundantly clear that law enforcement was disappointingly negligent in pursuing an arrest of Burch – particularly in light of the delay in entering Burch's warrant information into NCIC. Hopefully, the miscommunication and structural issues that occurred in this case have been or will be addressed. Under *Barker*:

> The government's intentional delay in locating a defendant will weigh heavily against it. . . . Negligence, on the other hand, will be weighted less heavily against the government but is still a considerable factor in the weighing process.

*United States v. Walker,* 92 F.3d 714 717 (8th Cir. 1996) (*citing Barker,* 407 U.S. at 531, 92 S.Ct. at 2192).

Moreover, in this case, a critical amount of the delay time – eight months – is attributable to Burch's actions in violating his ROR signature bond by failing to appear for a court date in the Circuit Court of Jackson County and in violating the terms of his state parole by failing to appear

at scheduled meeting with his parole officer. *Compare United States v. Weber*, 479 F.2d 331, 332-33 (8th Cir. 1973).

### 3. Assertion of speedy trial rights

A defendant's timely assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker,* 407 U.S. at 531-32, 92 S.Ct. at 2192-93. However, a defendant cannot invoke his right to a speedy trial until he knows criminal charges have been filed against him. Consequently, where a defendant is unaware of the existence of an indictment, he cannot "be taxed for invoking his speedy trial right only after his arrest." *Doggett,* 505 U.S. at 654, 112 S.Ct. at 2692. Based on the evidence presented, there is no basis for finding evidence Burch knew or should have known of the federal indictment handed down against him on January 28, 2015. As a result, his failure to invoke his right to a speedy trial after the indictment and before his arrest does not weigh against Burch under *Barker.*

### 4. Prejudice to Burch from the delay

The fourth *Barker* factor turns on whether the defendant was prejudiced by the government's post-indictment delay in securing his arrest. *United States v. Shepard,* 462 F.3d 847 864 (8th Cir. 2006). This factor is "evaluated 'in the light of the interests of defendants which the speedy trial right was designed to protect . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired . . . the most serious is the last.'" *Shepard,* 462 F.3d

9

at 864 (*quoting Barker,* 407 U.S. at 532, 92 S.Ct. at 2193). In this case, only the third interest seems pertinent.[4]

A criminal defendant can substantially advance the case for a Sixth Amendment violation by presenting evidence of actual prejudice – *e.g.,* deceased witnesses, destroyed evidence. In this case, Burch does not offer such evidence of actual prejudice. Instead, Burch – citing Doggett – argues that "[g]iven the amplified presumption of prejudice arising from . . . the first three factors, [Burch] has no duty to show actual prejudice arising from the loss of evidence or witnesses."

In *Doggett*, all of the *Barker* factors leading up to the prejudice analysis weighed in favor of the defendant. Nonetheless, the government asserted there was no Sixth Amendment violation because the defendant had "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692. The Court agreed that the defendant "c[a]me up short in this respect." *Id*. However, the Court went on to note:

> *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.

*Id.* at 655, 112 S.Ct. at 2692-93 (*internal punctuation and citations omitted*).

---

[4] During the pre-indictment delay period, Burch was incarcerated, but for criminal charges unrelated to this federal case. In addition, Burch, being unaware of the indictment, was not subject to any anxiety over the looming prosecution.

10

Consequently, the *Doggett* court concluded that prejudice may be presumed "albeit unspecified" if the other *Barker* factors support a speedy trial violation unless there is evidence of "the defendant's acquiescence"[5] or the government "persuasively rebut[s]" the presumption. *Id*. at 658, 112 S.Ct. at 2694. In this case, however, the Court does not view the other *Barker* factors as creating an "amplified presumption of prejudice" or even as weighing in favor of Burch.

There is case law to support a conclusion that Burch's failure to adduce evidence of actual prejudice dooms his motion to dismiss. For instance, in *United States v. Brown*, 325 F.3d 1032 (8th Cir. 2003), the Eighth Circuit concluded that the defendant bore a "burden to show the delay actually prejudiced him." *Id*. at 1035. In *Brown* and the case cited in its opinion, *United States v. Walker,* 92 F.3d 714, 716-17 (8th Cir.1996), the criminal defendant had *Barker* balancing factors weighing against him. *See*, *e.g.*, *Brown*, 325 F.3d at 1035 ("Because [the defendant] did not contact the U.S. Attorney or the district court to inquire about his case or his request for a speedy trial [after receiving a detainer while incarcerated on other charges], the third factor weighs against [the defendant]."); *Walker*, 92 F.3d at 719 (defendant knew of criminal charges and became a fugitive). Such a factor seemed critical to the Eighth Circuit in requiring evidence of actual prejudice:

> Considering the length and reason for the delay and [the defendant's] lack of diligence in asserting his rights, we cannot say [the defendant] was relieved of his burden to show the delay actually prejudiced him. . . .

*Brown*, 325 F.3d at 1035.

---

[5] The Court appeared to be referring to instances wherein a criminal defendant proceeded to enter a guilty plea notwithstanding a potential speedy trial violation.

In this case, the Court does not find that Burch was relieved of his burden to show the 22-month post-indictment delay actually prejudices his Sixth Amendment rights, particularly in light of the fact that 8 months of the delay is attributable to Burch's actions in jumping bail and violating his state probation in an effort to avoid prosecution on additional pending state criminal charges . Inasmuch as Burch has come forward with no evidence of prejudice, he has failed to meet this burden.

In accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the Motion To Dismiss Based on Post-Indictment Delay (Doc. 16) filed February 21, 2017.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

            /s/ *John T. Maughmer*
            **John T. Maughmer**
            **United States Magistrate Judge**